United States District Court
Eastern District of New York

-----------------------------------X

John Giambone,

          *Plaintiff*,                  **Memorandum and Order**

   - against -                No. 24-cv-5483 (KAM)(LGD)

Town of Southampton, New York and
Southampton Town Police Department,

          *Defendant*.

-----------------------------------X

**Kiyo A. Matsumoto, United States District Judge:**

        Pending before the Court is a motion to dismiss, (ECF No. 17), filed by the Town of Southampton, New York and the Southampton Town Police Department ("Defendants") seeking to dismiss *pro se* plaintiff John Giambone's Second Amended Complaint ("SAC"), (ECF No. 10), alleging state and federal discrimination claims arising from Plaintiff's employment as a police officer in Southampton, New York.[1]  Plaintiff asserts these claims under the New York State Human Rights Law ("NYSHRL"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and Title VII of the Civil Rights Act of 1964 ("Title VII").

        Before proceeding to the analysis of Plaintiff's age discrimination claims, Plaintiff's time-barred Title VII claims

---

[1] This case was reassigned to this Court on September 4, 2025.

must be dismissed with prejudice at the outset because the claims are untimely and because Plaintiff's February 25, 2025 complaint to the Equal Employment Opportunity Commission ("EEOC"), (ECF No. 17-3), failed to allege discrimination on the basis of a protected characteristic under Title VII. "Before bringing a Title VII suit in federal court, an individual <u>must</u> first present the claims forming the basis of such a suit in a complaint to the EEOC or the equivalent state agency." *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) (citation modified). Plaintiff's EEOC complaint, upon which this action is premised, contained <u>only</u> allegations of age discrimination and did not, explicitly or implicitly, allege any discrimination on the basis of any protected characteristic under Title VII.[2] (*See* ECF No. 17-3 at 2.[3]) Accordingly, the Court dismisses Plaintiff's Title VII claims and proceeds with analysis of Plaintiff's state and federal age discrimination claims.

As explained below, Plaintiff's federal age discrimination claims under the ADEA are dismissed for failure to state a claim, and the Court declines supplemental jurisdiction over Plaintiff's state law claims under the NYSHRL.

---

[2] Moreover, even if Plaintiff's Title VII claims were not barred, the Second Amendment Complaint lacks any allegation of discriminatory animus based on any protected characteristic under Title VII.

[3] All pinpoint citations refer to the page numbers assigned by the CM/ECF system.

**BACKGROUND**

## I.    Procedural Background

Plaintiff filed an age discrimination complaint to the EEOC on February 25, 2022, (ECF No. 17-3), and was issued a "Right to Sue" letter on May 7, 2024,[4] (ECF No. 8 at 6.)  On August 7, 2024, Plaintiff filed a *pro se* complaint in the Eastern District of New York.  (ECF No. 1 ("Complaint").)  On October 25, 2024, Plaintiff filed a *pro se* First Amended Complaint, (ECF No. 8 ("FAC")), and shortly thereafter on November 1, 2024, a *pro se* Second Amended Complaint,[5] (ECF No. 10).

Given that "the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotations omitted) (emphasis in original), the Court will read Plaintiff's Second Amended Complaint to include hostile work environment, disparate treatment, and retaliation claims based on his age.  The Court will further read the Second Amended Complaint as asserting these claims under both state and federal law[6] – specifically, under the

---

[4] Although Plaintiff did not attach his "Right to Sue" letter from the EEOC in his Second Amended Complaint (perhaps inadvertently), it was attached to his First Amended Complaint. (*See* ECF No. 8.)

[5] The Court accepts Plaintiff's *pro se* Second Amended Complaint, (ECF No. 10), as the operative complaint.

[6] The Second Amended Complaint alludes to "any related claims under New York law."  (SAC at 2.)

New York State Human Rights Law ("NYSHRL"), New York Executive Law § 290 *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*

## II.  Factual Background

Plaintiff is a "sixty-year-old white male who has served as a Police Officer for the Town of Southampton Police Department since 1995." (SAC at 6.)  Plaintiff alleges that he is "more experienced and qualified than many younger officers," but "[he has] repeatedly been passed over for promotions and transfers, which have instead been awarded to younger, less experienced individuals, some of whom are of different races and genders." (SAC at 6.)  In sum, Plaintiff alleges that he "ha[s] applied more than twenty times for various positions with the police department ... and each time, [he] ha[s] been denied career advancements." (SAC at 8.)

Although Plaintiff's factual allegations are devoid of any allegation from which a factfinder could infer age-related animus and include mostly events outside the statute of limitations period, the Court will nonetheless summarize the facts as alleged in the Second Amended Complaint.  The Court will first summarize Plaintiff's bullying and misconduct allegations (Part II.A) and then Plaintiff's alleged denial of advancement opportunities (Part II.B).

## A.    Bullying and Misconduct Allegations

Plaintiff describes four instances of alleged bullying and misconduct spanning approximately 20 years.  (SAC at 6-8.)  Each of these incidents is discussed below.  Notwithstanding the seriousness of some of the alleged misconduct, none of these incidents are alleged to be related to Plaintiff's age or be motivated by age-related animus.

### 1.    2004 Incident

*First*, Plaintiff alleges that in 2004 he was "unjustly suspended for six months without pay following a motor vehicle accident in which [he] was responding to an emergency call."  (SAC at 6.)  Plaintiff states that "[t]his accident nearly cost [him his] life as the vehicle rolled over several times, resulting in bodily injury and having to be flown to a trauma center for [his] injuries."  (SAC at 6.)  Plaintiff alleges that "[n]o other officer in the history of the police department has endured such a harsh punishment."  (SAC at 6.)  Plaintiff does not allege any factual nexus between his suspension and his age or any other protected characteristic.  This alleged incident is outside the statute of limitations and is not actionable.

### 2.    2006 Incident

*Second*, Plaintiff alleges that, "in early 2006, [he] was physically assaulted unexpectedly by Lt. William Hughs during classroom training through the use of an electronic stun gun placed

5

into the small of [Plaintiff's] back, causing pain, mental anguish, and embarrassment in front of the entire class as a result." (SAC at 6.) Plaintiff alleges that "[a]lthough Captain Tenaglia was notified of the incident, he refused to do anything about it." (SAC at 6.) Similar to the 2004 car accident incident, Plaintiff does <u>not</u> allege any factual nexus between Lt. Hughs' alleged assault and Plaintiff's age or any other protected characteristic. This alleged incident is also outside the statute of limitations and not actionable.

### 3. 2014-2015 Incidents

*Third*, Plaintiff alleges that, "[b]etween 2014 and 2015, Sgt. Steven Miller made disparaging and offensive remarks, even questioning [his] sexuality, often referring to [him] as a fagot [sic] and a queer." (SAC at 6.) Plaintiff further alleges that, "[i]n another instance, this Seargent would ask [Plaintiff] if [he] was gay or would ask if [Plaintiff] was a Homosexual" and that "Sgt Miller would demean [Plaintiff] and often cast a perception of gayness on [his] character, even bullying [Plaintiff] in front of others."[7] (SAC at 6-7.) Similar to the previously discussed incidents, Plaintiff does <u>not</u> allege any

---

[7] Plaintiff does not allege Title VII sex discrimination claims (related to discrimination on the basis of perceived sexual orientation) based on these alleged incidents of sexual harassment in 2014 and 2015, and any such claims would be time-barred because "[i]n New York, the statute of limitations for filing a charge with the EEOC is 300 days." *Odom v. Doar*, 497 F. App'x 88, 89 (2d Cir. 2012) (summary order).

facts suggesting that the alleged homophobic sexual harassment by Sgt. Miller in 2014 and 2015 was related to Plaintiff's age.

Plaintiff alleges that he "filed a formal complaint against Seargent Miller" and that "notification was made to Chief Robert Pearce, the PBA, and the Town Board, informing them about the inappropriate conduct and sexual harassment in the workplace." (SAC at 7.)  According to Plaintiff, "in 2015, [he] proposed a fair and equitable resolution to address this matter, and a verbal agreement was made with the Town Human Resources to transfer [him] to the Community Response Unit or the Detective Division as a settlement alternative to a lawsuit," but "this promise was never fulfilled."  (SAC at 7.)  Again, similar to the previously discussed incidents, Plaintiff does not allege that the town of Southampton's failure to comply with the terms of the alleged "verbal agreement" was related to Plaintiff's age.  This alleged incident is also outside the statute of limitations and not actionable.

### 4.    2021 Incident

*Fourth*, Plaintiff alleges that, "[i]n February 2021, a Lieutenant fabricated and falsified an official Personnel Order indicating that [Plaintiff] would be transferred to the Community Response Unit."  (SAC at 7.)  According to Plaintiff, the fake Personnel Order "was issued by then, Lt. Howard Kalb and was posted on the wall in Lt. Michael Joyce's office" and was considered a

7

"joke" but later "taken down when someone photographed it and brought it to [Plaintiff's] attention." (SAC at 7.) Plaintiff alleges that "[t]his act created false hope of advancing and subjected [him] to public ridicule and mocking" and that he was left with "a deep sense of defeat and humiliation." (SAC at 7.) Although Plaintiff's complaint alleges a mean-spirited prank by his colleagues and a culture of bullying, Plaintiff again does <u>not</u> allege that this incident was related to Plaintiff's age or any protected characteristics. This alleged incident is also outside the statute of limitations.

**B.    Denial of Advancement Opportunities**

Plaintiff states that "[i]t had always been [his] hope and dream to work in investigations and become a Detective, but [he is] continually denied any advancement." (SAC at 7.) Plaintiff presents numerous examples of being denied promotions and transfers throughout his decadeslong career at the police department. Though Plaintiff alleges that he has been "denied career advancements" "more than twenty times for various positions with the police department," (SAC at 8), Plaintiff's operative complaint details only three specific instances of denial of advancement opportunities.

**1.    January 2021 Denial of Transfer**

*First*, Plaintiff alleges a denial of transfer occurred in January 2021 following his voluntary participation in a pilot

program during which he was temporarily transferred to preferred units within the police department:

> [I]n 2020, under Chief Steven Skrynecki, there was a pilot program in which two other officers and I expressed interest. So, in that time, I applied for a temporary transfer from the patrol division, which I transferred to the Detective Division from March 2020 to July 2020. and then to the Community Response Unit from July 2020 to December 2020. Then, in January 2021, I was reassigned and transferred back to the patrol division without being considered for a permanent role despite meeting all performance objectives during these assignments. The two other officers, however, were later transferred or promoted despite my seniority, qualifications, and proven track record. Of the three officers in this pilot program, I was the only officer who would not receive a permanent position. Similarly, my temporary assignments in 2020 still have not been converted to permanent positions, further contributing to a toxic work environment. Instead, the other two candidates, who were much younger, were later transferred and or promoted to other divisions and titles, even though I was the most qualified, senior, and oldest officer. During this pilot program, it was understood that if all the performance objectives were met, there would be an opportunity for a permanent transfer. During this time, I met all the requirements and fulfilled my duties accordingly without any objections. Moreover, when other positions became available, I continued to apply every time, even today. Sadly, I continue to be passed over in favor of much younger, inexperienced officers, some in their twenties and thirties with less than five years of on-the-job experience. Also, this is not the first time I have been passed over and denied a promotion in favor of vastly younger and inexperienced officers, some with only eighteen months or three years.

(SAC at 7.) Although these denials of Plaintiff's requests to transfer are related to Plaintiff's age discrimination claims, these alleged incidents with specified dates fall outside the statute of limitations.

## 2. **May 2021 Denial of Transfer**

*Second*, Plaintiff alleges that in May 2021 he was notified that his denial of permanent transfer opportunities was due to his social media activity. (SAC at 7.) Plaintiff alleges no facts to raise an inference of age discrimination. Plaintiff states that he "maintained a personal account under an assumed name and commented on religious and social issues as part of [his] ministry studies" and that "these actions were cited as the rationale for withholding a promotion." (SAC at 7.)

Plaintiff makes a passing reference to a First Amendment claim: "Despite my right to free expression under NYLL 201-d, these actions were cited as the rationale for withholding a promotion, violating my constitutional and state-protected rights." (SAC at 7.) The Court does not construe this one-sentence allegation as an assertion of a constitutional claim for First Amendment retaliation, but even if the Court did so, Plaintiff's "claims of First Amendment retaliation ... are barred by the three-year statute of limitations." *Smith v. New York City Dep't of Educ.*, 524 F. App'x 730, 732 (2d Cir. 2013) (summary order). Plaintiff's original complaint was filed on August 7, 2024, (ECF No. 1), which was over three years after the alleged denial of transfer in May 2021.[8]

---

[8] Given the current procedural posture, the Court declines to consider, at the motion to dismiss stage, Defendants' exhibits containing inflammatory social media posts allegedly authored by Plaintiff, (*see* ECF No. 17-7), and Defendants'

### 3. October 2024 Denial of Transfer

*Third*, Plaintiff alleges that "in October 2024, [he] applied for the Community Response Unit, but Chief James Kiernan again blocked [his] application." (SAC at 8.) Plaintiff alleges that he "sent an email to the review committee with an attached cover letter, a proposal, and a research paper, copying Chief Kiernan and Captain Kalb on the email, only to receive a response from the chief thirty minutes before [Plaintiff's] interview indicating that [he] needed to focus [his] attention on the 'task at hand.'" (SAC at 8.) Plaintiff further alleges that, "[n]ot only did the chief reply to 'all' on the email, but he further went on to say that due to the lack of traffic enforcement, [Plaintiff] was to be moved out of [his] sector, but that since [Plaintiff] was supposed to retire last year, [he] was allowed to remain in the sector."[9] (SAC at 8.) Plaintiff believes "[t]he chief's actions and response before the interview added to the already tense situation, causing further stress and anxiety" and that "[t]his kind of action also sent a clear message to those conducting the interview, which would result in being denied." (SAC at 8.) These allegations, including a stated understanding

---

related argument that such posts undermined public trust and risked rendering Plaintiff an unsuitable law enforcement witness in criminal cases, (ECF No. 17-8 at 22).

[9] It is unclear from the Second Amended Complaint whether Plaintiff had a target retirement date provided by the Plaintiff, the police department, or an agreement.

by Chief Kiernan that Plaintiff was going to retire, fail to assert facts raising an inference of age discrimination under the ADEA.

## **LEGAL STANDARD**

### I.   Motion to Dismiss

####    A.   General Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Cardinal Motors, Inc. v. H&H Sports Prot. USA Inc.*, 128 F.4th 112, 120 (2d Cir. 2025) (internal quotations omitted).  In assessing whether Plaintiff's allegations meet this standard, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023) (alteration adopted) (first quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  As the Second Circuit noted, "[t]he Supreme Court has clarified recently that the but-for causation standard for discrimination claims applies not only at trial but at the pleading stage as well." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 (2d Cir. 2021) (citing *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 332 (2020)).

B.    **Liberal Construction of *Pro Se* Pleadings**

As previously discussed, "the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest*." *Triestman*, 470 F.3d at 474 (internal quotations omitted) (emphasis in original). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

## II.   ADEA Claims

A.    **Hostile Work Environment**

For "a federal hostile work environment claim, a plaintiff must show conduct that (1) is objectively severe or pervasive — that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's protected characteristic." *Adams v. Equinox Holdings, Inc.*, 662 F. Supp. 3d 444, 459 (S.D.N.Y. 2023) (citation modified), *aff'd*, No. 23-608, 2024 WL 1787108 (2d Cir. Apr. 25, 2024).

B.    **Disparate Treatment**

"For an individual disparate treatment claim to survive a Rule 12(b)(6) motion, a plaintiff must plausibly allege that (1) the employer took adverse action against [the plaintiff], *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015), and (2) the employer would not have taken the adverse action but

13

for [the plaintiff's] age, *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 (2d Cir. 2021)." *Doheny v. Int'l Bus. Machines, Corp.*, 714 F. Supp. 3d 342, 360 (S.D.N.Y. 2024) (citation modified).

### C.   Retaliation

For a retaliation claim, "[the plaintiff] must show (1) that [the plaintiff] participated in a protected activity, (2) that [the plaintiff] suffered an adverse employment action, and (3) that there was a causal connection between [the plaintiff's] engaging in the protected activity and the adverse employment action." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010).

### D.   Statute of Limitations

"Before a plaintiff may assert claims under ... the ADEA in federal court, [he] must present the claims forming the basis of such a suit in a complaint to the EEOC." *Adams*, 662 F. Supp. 3d at 455 (internal quotations omitted). "A claim under that statute is time-barred if the plaintiff does not file a charge with the EEOC within 300 days of the alleged unlawful employment practice." *Id.* (citing *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 112 (2d Cir. 2008)).

"Where the plaintiff complains of discrete discriminatory or retaliatory acts such as termination, failure to promote, denial of transfer, or refusal to hire, such claims are

not actionable if they occurred prior to the 300-day period even though they may be related to acts that occurred within the permissible 300-day period." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (internal quotations omitted). But "a charge alleging a hostile work environment claim will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice *and at least one act falls within the time period*." *Davis-Garett*, 921 F.3d at 42 (citation modified) (emphasis in original).

### III. NYSHRL Claims

Prior to 2019, "[t]he law governing ADEA claims [was] held to be identical to that governing claims made under the [NYSHRL]." *Gorzynski*, 596 F.3d at 105 n.6. This changed when "[t]he New York State Legislature passed several amendments to the NYSHRL in June 2019, the effect of which is to render the standard for claims closer to the standard of the NYCHRL." *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021). Given these changes, the NYSHRL, similar to "the NYCHRL, *requires* an independent analysis." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (emphasis added). Pursuant to the Second Circuit's guidance, however, analysis of state law claims should only be undertaken if a plaintiff's federal claims survive. *See, e.g.*, *Oneida Indian Nation of New York v. Madison Cnty.*, 665 F.3d 408, 437 (2d Cir. 2011) ("Although the

decision whether to decline to exercise supplemental jurisdiction is purely discretionary ... we have repeatedly said that if a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well.") (citation modified). The Second Circuit "ha[s] also cautioned against unnecessarily delving into non-federal legal issues in the absence of any continuing basis for federal question jurisdiction." *Norman v. NYU Langone Health Sys.*, No. 20-3624-CV, 2021 WL 5986999, at *6 (2d Cir. Dec. 17, 2021) (summary order).

## DISCUSSION

Although the Second Amended Complaint includes allegations of workplace bullying and misconduct spanning a 20-year period, its allegations do not fall within the statute of limitations or the ambit of the ADEA. As discussed below, Plaintiff fails to state a federal claim for hostile work environment, disparate treatment, and retaliation because, *inter alia*, Plaintiff has not plausibly alleged facts from which a factfinder could infer age-related animus. The ADEA is not a catchall statute covering all workplace bullying and does not serve as a basis for the relief Plaintiff seeks in this action. Therefore, the Court dismisses Plaintiff's federal claims under the ADEA and declines supplemental jurisdiction over Plaintiff's state claims under the NYSHRL.

## I.    Federal Claims

### A.    Hostile Work Environment Claim

Plaintiff's hostile work environment claim fails because there is no allegation that Defendants acted in a hostile or abusive manner within the 300-day period preceding Plaintiff's EEOC complaint.  At a minimum, Plaintiff must allege that "at least one act falls within the [300-day] time period" preceding Plaintiff's EEOC complaint. *Davis-Garett*, 921 F.3d at 42 (citation modified).  The instances of hostility and abuse alleged in the Second Amended Complaint occurred in 2004, 2006, 2014 to 2015, and February 2021 – all of which fall outside the 300-day window preceding Plaintiff's February 25, 2022 EEOC complaint.[10]  (*See* ECF No. 17-3.)  Even if the Court were to look beyond the Second Amended Complaint and consider exhibits attached to Plaintiff's response in opposition to Defendants' motion to dismiss,[11] Plaintiff's timeline of events still lacks any allegation of hostile or abusive acts within the statute of limitations.[12]  (*See* ECF No. 17-14.)  Instead, Plaintiff's timeline of alleged facts

---

[10] The 300-day time period preceding Plaintiff's EEOC complaint on February 25, 2022 began on or about May 1, 2021.

[11] "Given the liberality afforded *pro se* litigants, it is appropriate to consider new allegations in a *pro se* plaintiff's opposition to a motion to dismiss where they are consistent with the allegations contained in the pleading." *Williams v. New York State, et al.*, No. 24-cv-04285 (PMH), 2025 WL 2452219, at *1 n.1 (S.D.N.Y. Aug. 26, 2025) (citing *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014)).

[12] Plaintiff attached a timeline of events, (ECF No. 17-14), as an exhibit to his response in opposition to Defendants' motion to dismiss.

includes mundane information such as Plaintiff's letters of interest, personnel changes within the police department, and an August 1, 2024 "[i]n-person meeting with Juan Becerra, Director of Human Resources, to inform him of ongoing conflicts and achieve resolution." (ECF No. 17-14 at 2-3.) A single vague reference to "ongoing conflicts" is not an adequate allegation of an act "that a reasonable person would find hostile or abusive." *Adams*, 662 F. Supp. 3d at 459.

Moreover, even for Plaintiff's allegations of bullying and misconduct preceding the statute of limitations period, Plaintiff has not plausibly alleged the hostility and abuse he suffered was "*because of* the plaintiff's protected characteristic" – that is, Plaintiff's age. *Adams*, 662 F. Supp. 3d at 459 (internal quotations omitted) (emphasis added). For example, the 2006 incident involving an alleged assault by Lt. Hughs has no discernible connection to Plaintiff's age at that time. Similarly, the 2014 and 2015 incidents involving alleged homophobic comments directed at Plaintiff by Sgt. Miller appear wholly unrelated to Plaintiff's age. Accordingly, Plaintiff fails to state a federal ADEA claim for hostile work environment.

**B.  Disparate Treatment Claim**

As a threshold matter, the Court must restrict its analysis to alleged age-based disparate treatment (i.e. denials of transfers and promotions) that occurred within the statute of

limitations period.  Given that the statute of limitations period began on or about May 1, 2021, *see supra* note 10, the Court cannot consider denials of transfers or promotions that occurred prior to May 1, 2021.  *See Davis-Garett*, 921 F.3d at 42 ("Where the plaintiff complains of discrete discriminatory or retaliatory acts such as termination, failure to promote, denial of transfer, or refusal to hire, such claims are not actionable if they occurred prior to the 300-day period even though they may be related to acts that occurred within the permissible 300-day period.") (internal quotations omitted).

Upon reviewing Plaintiff's alleged denials of transfers and promotions within the statute of limitations period, Plaintiff does not state a claim for age discrimination because he fails to plausibly allege, in any of his submissions, any evidence of age-related animus.  Moreover, Plaintiff fails to allege that any such age-related animus, even if it were alleged, was the "but for" cause of denials of his requests for transfers and promotions.

*First*, Plaintiff's allegation that, in May 2021, he was notified that his denial of permanent transfer opportunities was related to his social media activity has no relationship whatsoever with Plaintiff's age.  (SAC at 7.)  *Second*, in October 2024, after Plaintiff applied for the Community Response Unit, Chief Kiernan's email reply that Plaintiff should "focus [his] attention on the 'task at hand'" and an unspecified comment about Plaintiff's

expected retirement "last year" to explain why Plaintiff "was allowed to remain in the [patrol and traffic enforcement] sector" do not suggest any age-based animus. (SAC at 8.) As the Second Circuit has explained, "[s]tray age-related remarks are insufficient to raise an inference of discriminatory motive unless they (1) were made repeatedly, (2) drew a direct link between discriminatory stereotypes and the adverse employment decision, and (3) were made by supervisors who played a substantial role in the decision to terminate." *Lively*, 6 F.4th at 306 (citation modified). Plaintiff's allegations are not sufficient to state an age-based disparate treatment claim under the *Lively* standards. *Third*, Plaintiff's timeline of events (as previously discussed) almost exclusively includes information regarding Plaintiff's letters of interest and personnel changes at the department. No age-related animus is alleged. Accordingly, Plaintiff fails to state a federal ADEA claim for disparate treatment.

### C. Retaliation Claim

As previously discussed, "[t]o establish a prima facie case of retaliation, [the plaintiff] must show (1) that [the plaintiff] participated in a protected activity, (2) that [the plaintiff] suffered an adverse employment action, and (3) that there was a causal connection between [the plaintiff's] engaging in the protected activity and the adverse employment action." *Gorzynski*, 596 F.3d at 110. To the extent a retaliation claim can

be construed, it appears that Plaintiff believes that he was subjected to retaliation by being denied transfers and promotions. Given that the Court cannot consider retaliatory acts that occurred outside the statute of limitations or before Plaintiff engaged in protected activity, the Court cannot consider denials of transfers or promotions that occurred before May 1, 2021.[13]

As a threshold matter, Plaintiff has not specified a protected activity, so the Court is left to identify one. To satisfy "the 'protected activity' element of a Title VII or ADEA retaliation claim, the plaintiff need only have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII or the ADEA." *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006) (citation modified). The only cognizable instance of Plaintiff "opposing an employment practice made unlawful by Title VII or the ADEA," *id.* at 210, during or near the statute of limitations period is Plaintiff's February 25, 2022 EEOC complaint alleging age discrimination. (*See* ECF No. 17-3.)

In reviewing Plaintiff's submissions, the only possibly retaliatory act that was alleged after Plaintiff engaged in protected activity by filing his February 25, 2022 EEOC complaint

---

[13] *See Davis-Garett*, 921 F.3d at 42 ("Where the plaintiff complains of discrete discriminatory or retaliatory acts such as ... failure to promote, denial of transfer, or refusal to hire, such claims are not actionable if they occurred prior to the 300-day period even though they may be related to acts that occurred within the permissible 300-day period.") (internal quotations omitted).

was the October 2024 denial of Plaintiff's transfer request.  (SAC at 8.)  Specifically, Plaintiff alleges that "Chief James Kiernan again blocked [his] application" and that Chief Kiernan sent an email (replying all) that Plaintiff "needed to focus [his] attention on the 'task at hand.'"  (SAC at 8.)  Chief Kiernan also allegedly alluded to Plaintiff's expected retirement in the past year.  (SAC at 8.)  Plaintiff alleges "[t]he chief's actions and response before the interview added to the already tense situation, causing further stress and anxiety" and that "[t]his kind of action also sent a clear message to those conducting the interview, which would result in being denied."  (SAC at 8.)  Given that there was a gap of over two and a half years between Plaintiff's protected activity (the filing of his EEOC complaint in February 2022) and the alleged adverse action (the denial of his transfer request in October 2024) and the absence of any allegation suggesting that the two events were related, Plaintiff has not plausibly alleged a causal connection as required to plead an ADEA retaliation claim. "Although temporal proximity between protected activity and adverse employment action can support an inference of discriminatory intent, the Supreme Court has suggested that the temporal proximity must be very close." *Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016) (summary order) (internal quotations omitted) (citing *Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001)).  Given the Second Circuit's finding that a "gap of

... sixteen months is too long to support a retaliation claim based solely on temporal connection," *Riddle*, 640 F. App'x at 79, the Court finds the gap between the protected activity and the alleged retaliation in the instant case (over two and a half years) to be too long to support an inference of a causal connection between Plaintiff's EEOC complaint and his denial of a transfer. Accordingly, Plaintiff fails to state a federal ADEA claim for retaliation.

## II.   State Claims

Pursuant to the Second Circuit's guidance, the Court declines supplemental jurisdiction over Plaintiff's NYSHRL claims of age discrimination. *See Oneida Indian Nation of New York*, 665 F.3d at 437 ("Although the decision whether to decline to exercise supplemental jurisdiction is purely discretionary ... we have repeatedly said that if a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well.") (citation modified).

<u>**CONCLUSION**</u>

For the reasons explained above, Plaintiff's federal claims are dismissed for failure to state a claim, and the Court declines supplemental jurisdiction over Plaintiff's state law claims.  Plaintiff may, if he elects to do so, pursue his state law claims in state court.

Given that this action is dismissed in its entirety, the

Clerk of Court is respectfully directed to close this case.  The Clerk of Court is also respectfully directed to serve on Plaintiff this Memorandum and Order and to note service on the docket by September 12, 2025.

**So ordered.**

Dated:    September 11, 2025
          Brooklyn, New York

_____
**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York